## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO 1:06-CR-0199** |
| | : | |
| **v.** | : | **(Chief Judge Conner)** |
| | : | |
| **FERNANDO BELTRAN** | : | |

## MEMORANDUM

Presently before the court is defendant's *pro se* motion (Doc. 1811) to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.[1]  For the reasons that follow, the motion (Doc. 1811) will be denied.

## I.   Factual Background and Procedural History[2]

Evidence introduced at trial generally established that Beltran was a member of a drug trafficking conspiracy that supplied illegal narcotics to drug distributors in Central Pennsylvania, including Adalberto Romero ("Romero"), Amauris Sanchez ("Sanchez"), Jamie Perez ("Perez"), and Pedro Rivera ("Rivera"). Romero was arrested on April 20, 2006, and he immediately agreed to cooperate with the Drug Enforcement Administration ("DEA") and to conduct recorded phone calls and meetings with Antonio Avila ("Avila").  (Doc. 1385 at 163-164).  Avila introduced Romero to Beltran.  (Id. at 164-167).  On April 22, 2006, Romero

---

[1] See 28 U.S.C. § 2255 ("A prisoner in custody under sentence of a [district] court . . . claiming . . . that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence.").

[2] This section is based on the testimonial and documentary evidence introduced at Beltran's trial, held on June 8 to June 23, 2009.  It only includes those facts relevant to the court's analysis of the instant motion.

arranged for the purchase of five kilograms of cocaine from Avila.  (Id. at 168-69).

The transaction was to occur at Colonial Park Plaza.  (Id.)  After the transaction

was complete, law enforcement officers followed Beltran for a short distance and

then arrested him.  (Id. at 169-77).

On April 24, 2006, Beltran and Avila were charged in a criminal complaint

with a violation of 21 U.S.C. § 846, conspiracy to distribute and possess with intent

to distribute five kilograms and more of cocaine hydrochloride, and a violation of

21 U.S.C. § 841(a)(1), distribution and possession with intent to distribute five

kilograms and more of cocaine hydrochloride.  The Grand Jury issued an

indictment charging the same offenses against Beltran on April 26, 2006 in Case No.

1:06-CR-00165.  In the above captioned case, Beltran was first charged in an eight-

count superseding indictment for drug offenses on January 11, 2007.  (Doc. 77).

Marc Scaringi, Esquire, entered an appearance on behalf of Beltran on February 6,

2007.  (Doc. 254).  On June 4, 2007, the court granted Attorney Scaringi's motion to

withdraw and appointed Terry McGowan, Esquire ("trial counsel") to represent the

defendant.  (Doc. 418).

Following his arrest on December 20, 2006, Sanchez was housed in Perry

County Prison and Beltran became his cell mate.  (Doc. 1388 at 165-66).  Beltran

told Sanchez about a plan to escape that involved Avila and Beltran and third party

assistance.  (Id. at 166-69).  Sanchez's attorney provided this information to the

government and Sanchez began cooperating with the government.  (Id. at 167).

Under the direction of the DEA, Sanchez and Karen Brown ("Brown"), a jail

counselor, began taping escape-related conversations with Beltran and Avila.  (<u>Id.</u> at 168-77).  Brown pretended to help Beltran and Avila in their plans.  (<u>Id.</u>)  In the fall of 2007, Beltran's sister sent approximately $44,000 to a DEA undercover mailbox intending to pay for insider assistance.  (Id.)

On January 9, 2008, the Grand Jury returned a second superseding indictment, which charged Beltran with the additional offense of attempted escape, in violation of 18 U.S.C. §§ 751 and 2.  (Doc. 602).  A third superseding indictment charged Beltran with wire fraud, in violation of 18 U.S.C. §§ 1343 and 1346, and use of interstate facilities in aid of bribery, in violation of 18 U.S.C. §§ 1952 (a)(3) and (2) on September 17, 2008.  (Doc. 828).

Jury selection and trial commenced on June 8, 2009 against Beltran and co-defendants Avila, Rogelio Lopez ("Lopez"), and Jamie Cardenas-Borbon ("Borbon").  Transcripts of the recorded calls and meetings that occurred between Romero, Avila, and Beltran on April 21 and 22, 2006, were introduced into evidence at trial.  Numerous law enforcement officers testified, including DEA Agents Philip Klemick and Mark O'Donnell.  The jury also viewed a DEA-produced videotape of the April 22, 2006, drug transaction between Beltran and Romero.  Rivera, Perez, and Sanchez testified as to Beltran's involvement in drug trafficking activity, and Sanchez also testified concerning Beltran's escape plans.  Portions of transcripts of consensually-recorded conversations among Sanchez, Brown, Avila, and Beltran concerning Beltran and Avila's escape plans were also read into the record.

The court ultimately granted trial counsel's motion for judgment of acquittal on the wire fraud count. (See Doc. 1393). On June 23, 2009, the jury returned a verdict finding Beltran guilty of all other counts. (Doc. 1214). Beltran filed motions to join in post-trial motions filed by Lopez and Avila. (Docs. 1242, 1243). Borbon filed a supporting brief on behalf of all defendants. (Docs. 1278, 1282). The court denied the defendants' post-trial motions on November 23, 2009. (Doc. 1503). Beltran was ultimately sentenced to 240 months imprisonment.

Beltran filed a notice of appeal with the Third Circuit on February 22, 2010. (Doc. 1632). The Third Circuit denied his appeal on July 29, 2011. See United States v. Beltran, 440 F. App'x 133 (3d Cir. 2011). The Supreme Court denied Beltran's petition for writ of certiorari on November 28, 2011. See Beltran v. United States, 132 S. Ct. 790 (2011).

On November 30, 2012, Beltran filed a § 2255 motion and motion for extension of time to supplement his original motion. (Docs. 1788, 1789). The court issued a Miller notice on March 4, 2013. (Doc. 1796). On April 16, 2013, the defendant filed his notice of election form indicating that he would withdraw his motion and file an all-inclusive motion. (Docs. 1796, 1802). On July 8, 2013, Beltran filed the instant motion pursuant to 28 U.S.C. § 2255. (Doc. 1811). The motion is fully briefed and ripe for disposition.

## II.   **Legal Standard**

Under 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct the prisoner's sentence. In general, the court may

4

afford relief under § 2255 based on one of four grounds: (1) the sentence was imposed in violation of the Constitution or other federal laws; (2) the sentencing court lacked jurisdiction to impose the sentence; (3) the sentence exceeds the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. R. Governing § 2255 Cases 1(a). A district court is not required to hold a hearing when the record conclusively shows that a movant is not entitled to relief. United States v. Lilly, 536 F.3d 190, 195 (3d Cir. 2008); see also United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000) ("Vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court.").

A defendant may not use a § 2255 motion to relitigate questions previously raised and considered on direct appeal. See United States v. Hayes, 231 F.3d 1132, 1139 (9th Cir. 2000) ("When a defendant has raised a claim and has been given a full and fair opportunity to litigate it on direct appeal, that claim may not be used as a basis for a subsequent 2255 petition."). Similarly, if a defendant seeks collateral relief based on alleged trial errors to which no objection was made, or based on appellate errors not preserved on direct appeal, a defendant must demonstrate both (1) "cause" excusing his procedural default and (2) "actual prejudice" resulting from the errors or his "actual innocence." United States v. Frady, 456 U.S. 152, 167-68 (1982). A defendant may show "cause" for his procedural default by demonstrating ineffective assistance of counsel. United States v. Mannino, 212 F.3d 835, 840 (3d Cir. 2000).

A collateral attack based on ineffective assistance of counsel is governed by the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984). To prevail on this claim, a petitioner must demonstrate (1) that counsel's representation fell below an objective standard of reasonableness based on prevailing professional norms and (2) that the deficient representation was prejudicial. See id. at 687-88. Conclusory allegations are insufficient to entitle a petitioner to relief under § 2255. See Sepulveda v. United States, 69 F. Supp. 2d 633, 639-40 (D.N.J. 1999) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

In determining whether counsel has satisfied the objective standard of reasonableness in accordance with the first prong, courts must be highly deferential toward counsel's conduct. Strickland, 466 U.S. at 689. There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. See United States v. Gray, 878 F.2d 702, 710 (3d Cir. 1989). Only a "rare claim" of ineffectiveness of counsel should succeed "under the properly deferential standard to be applied in scrutinizing counsel's performance." Id. at 711 (citing Strickland, 466 U.S. at 689-90). Counsel will not be deemed ineffective for failing to raise a meritless claim. United States v. Saunders, 165 F.3d 248, 253 (3d Cir. 1999).

To satisfy the prejudice prong, the petitioner must show that, but for counsel's errors, the outcome of the proceeding would have been different. See Strickland, 466 U.S. at 694. The district court need not carry out its analysis of the

two prongs in a particular order or even address both prongs of the inquiry if the defendant makes an insufficient showing in one.  Id. at 697.

## III.   Discussion

Beltran's initial submission (Doc. 1811) to the court is approximately 140 pages long.  It is repetitive and often incoherent.  Thus, it is difficult for the court to determine the exact parameters of Beltran's claims.  However, in light of Beltran's *pro se* status, the court will endeavor to address each identifiable claim.

Preliminarily, the court notes that the bulk of Beltran's claims are not cognizable on collateral review because they are procedurally defaulted.[3]  Beltran does not attempt to demonstrate any "cause" excusing his failure to raise the alleged errors at trial or on direct appeal.  United States v. Frady, 456 U.S. 152, 167-68 (1982).  The remainder of Beltran's brief questions why trial counsel did or did not take certain actions.  (See Doc. 1811-1 at 30-42).  Some of the questions concern the same general substance as Beltran's procedurally defaulted claims.  The questions are not characterized as claims of ineffective assistance of counsel, but the court will construe them as such in the interests of justice.  Beltran's claims of

---

[3] The following claims are subject to procedural default: (1) the alleged violation of Beltran's right to a speedy trial; (2) the alleged violation of Beltran's Fifth Amendment rights against self-incrimination and due process based on the trial use of recorded conversations between defendant and Romero or Sanchez; (3) the alleged violation of Beltran's Fourth Amendment rights based on the trial use of recorded conversations; (4) the alleged violation of Beltran's Sixth Amendment Confrontation Clause right because Brown was not called as a witness at trial; (5) the court erred in not granting Beltran's motion for severence; and (6) the alleged violation of Beltran's Sixth Amendment right to a jury selected from a fair cross-section of the community.  (See Docs. 1811, 1811-1 at 1-30).

ineffective assistance of counsel include: (1) trial counsel's failure to assert Beltran's constitutional right to a speedy trial; (2) trial counsel's failure to seek suppression of recorded conversations between Beltran and Sanchez, Brown, or Romero; (3) trial counsel's stipulation to the accuracy of transcripts introduced at trial; (4) trial counsel's failure to cross examine Agent Klemick and Agent O'Donnell on certain topics; (5) trial counsel's failure to call Brown as a witness or require the government to call her; (6) trial counsel's failure to challenge the composition of the jury venire.  The court will address each of these issues in turn.

 A. Speedy Trial

 Beltran first asserts that trial counsel should have asserted Beltran's constitutional right to a speedy trial.  The Sixth Amendment requires that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."  U.S. Const. Amend. VI.  The factors to be considered in analyzing an alleged speedy trial violation under the Sixth Amendment are (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant.  Barker v. Wingo, 407 U.S. 514, 530 (1972); Hakeem v. Beyer, 990 F.2d 750, 759 (3d Cir. 1993).  There was a lengthy delay between Beltran's initial arrest in 2006 and his ultimate trial in 2009, but the case involved serious, complicated drug trafficking conspiracy charges against 26 defendants. Moreover, the reasons for the delay are just as attributable to Beltran and his co-defendants as they are to the government.  (Compare Docs. 402, 403, 404, 422, 445, 452, 454, 538, 774, 935, 949, 1002 with Docs. 192, 373, 429, 572, 585, 593, 620, 659, 689,

701, 749, 840).  Beltran did not oppose any of the government's motions to continue

trial.  (See Docs. 192, 373, 429, 572, 585, 593, 620, 659, 689, 701, 749, 840).

Beltran also fails to establish any prejudice under either Barker or

Strickland.  Beltran alleges that trial counsel's failure to assert his constitutional

right to a speedy trial prevented him from impeaching government witnesses with

convictions that, due to the delay, fell outside of the 10-year period for allowing

impeachment by conviction pursuant to Federal Rule of Evidence 609(b).  However,

Beltran fails to identify the specific witnesses and convictions thus excluded.

Beltran also fails to assert how further impeachment on the basis of prior criminal

convictions would have resulted in Beltran's acquittal.  Hence, Beltran does not

adequately assert that his trial counsel was deficient in failing to make a speedy

trial objection or that Beltran was ultimately prejudiced.

     B.    Suppression of Recorded Conversations

Beltran claims that trial counsel was ineffective for failing to move to

suppress several recorded conversations.  First, Beltran asserts that trial counsel

should have moved to suppress "the recordings illegally obtained through the body

wire Romero was wearing on April 21st and 22nd, 2006."  (Doc. 1811-1 at 34).

Beltran claims that the recordings "were not consensual because Romero, rather

than a codefendant, coconspirator, or accomplice, was a Government Agent

interrogating Beltran, and Mr. Avila during the April 21st, and 22nd events."  (Doc.

1811 at 53).  Beltran also claims that trial counsel should have sought to suppress

any conversations recorded by Sanchez and Brown while Beltran was in Perry County Prison.  (Doc. 1811-1 at 34).

Beltran does not identify the specific constitutional provisions that he believes were violated through these recordings.  It is clear that the recorded conversations did not violate the Fourth Amendment.  18 U.S.C § 2511(2)(c) provides that "[i]t shall not be unlawful . . . for a person acting under color of law to intercept a wire, oral or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception."  See also Lopez v. United States, 373 U.S. 427 (1963) (holding that the use of an electronic device by a government agent to record conversations with a defendant does not violate the defendant's Fourth Amendment rights); United States v. White, 401 U.S. 745, 751 (1971) (same). Romero, Sanchez, and Brown all consented to the recordings of their conversations with Beltran.  Thus, the introduction of the recorded conversations did not violate the Fourth Amendment.

The Fifth and Sixth Amendment are equally inapplicable to the conversations recorded on April 21 and 22, 2006: Beltran was clearly not in custody during the conversations nor had he been charged with a crime.  See Illinois v. Perkins, 496 U.S. 292, 297 (1990) (holding that an undercover law enforcement officer posing as a fellow inmate is not required to give Miranda warnings to an incarcerated suspect because the traditional concerns presented by a custodial interrogation are not present); Kirby v. Illinois, 406 U.S. 682, 689 (1972) (holding

10

that a person's Sixth Amendment right to counsel only attaches after adversarial judicial proceedings have been initiated against him).

Similarly, with respect to the recorded conversations at Perry County Prison, Beltran did not know that Sanchez and Brown were acting as government agents. Thus, <u>Miranda</u> warnings were not required.  <u>Miranda v. Arizona</u>, 384 U.S. 436, 448-50 (1966); <u>Perkins</u>, 496 U.S. at 296; <u>United States v. Ingle</u>, 157 F.3d 1147, 1150 (8th Cir. 1998) (<u>Miranda</u> not required for conversations between defendant and fellow inmates working with police).  Moreover, the Sixth Amendment right to counsel is "offense specific" and applies only to charges to which the Sixth Amendment right has already attached.  <u>See</u> <u>McNeil v. Wisconsin</u>, 501 U.S. 171, 175 (1991).  The conversations that were recorded at Perry County Prison were evidence of new, as-yet uncharged offenses of attempted escape and other related offenses.  Thus, the Sixth Amendment right to counsel for those offenses had not yet attached.  The court cannot find that trial counsel was ineffective for failing to raise such meritless claims.

C.    <u>Stipulation to Accuracy of Transcripts</u>

Beltran appears to assert that trial counsel was ineffective for stipulating to the accuracy of certain transcripts introduced into evidence at trial.  (Doc. 1811-1 at 34).  However, Beltran does not provide any factual assertions concerning the alleged inaccuracies of the transcripts or how those alleged inaccuracies were relevant to his defense.  Thus, he fails to adequately state a claim under <u>Strickland</u> and this claim is meritless.

11

D.    <u>Cross Examination of Certain Witnesses</u>

Beltran further asserts that trial counsel was ineffective for failing to cross examine Agent Klemick and Agent O'Donnell on certain topics.  (Doc. 1811-1 at 35-36).  Specifically, Beltran believes that Sanchez's testimony that he owed a sizeable drug trafficking debt but continued to live openly was not credible.  (<u>Id.</u>)  He argues that trial counsel should have cross-examined Agent Klemick concerning this belief.  (<u>Id.</u>)  Further, he states that trial counsel should have cross-examined Agent O'Donnell concerning his inability to find hotel records corresponding to each date that Beltran was in the Lancaster area.  (<u>Id.</u>)  He also claims that trial counsel should have cross-examined both agents to establish that Beltran did not warn Lopez that Sanchez was a government cooperator.  (<u>Id.</u>)

Beltran does not demonstrate how the result of his trial would have been different had trial counsel questioned Agents Klemick and O'Donnell on these topics.  In the face of the overwhelming evidence presented against Beltran, it is quite unlikely that the answers to these relatively minor avenues of questioning would have resulted in Beltran's acquittal.

E.    Failure to Call Karen Brown

Beltran also appears to allege that trial counsel was ineffective for failing to call Brown or to try and compel the government to call her.  (Doc. 1811-11 at 35-36).  Preliminarily, a defense attorney cannot compel the government to call specific witnesses.  Moreover, Beltran fails to make any argument concerning how Brown's testimony would have assisted in his defense, which would be necessary to establish

12

both prongs under <u>Strickland</u>.  Thus, Beltran does not assert an adequate

ineffective assistance of counsel claim on this ground.

      F.    <u>Fair Cross Section</u>

     Beltran also argues that his counsel was ineffective for failing to object to the

composition of the jury pool under the Sixth Amendment to the United States

Constitution.  The Sixth Amendment guarantees defendants a trial by a jury

selected from a "fair cross section" of the community.  This right is codified in the

Jury Service Selection Act of 1968, 28 U.S.C. § 1861.  To establish a Sixth

Amendment fair cross section claim, a defendant must establish that (1) the

excluded group is cognizable; (2) the representation of the group in jury venires is

not "fair and reasonable" in relation to the number of such persons in the

community; and (3) the underrepresentation is caused by "systematic exclusion" of

the group during the jury selection process.  <u>Duren v. Missouri</u>, 439 U.S. 357, 364

(1979).  To establish the second prong, a defendant must demonstrate "the

percentage of the community made up of the group alleged to be underrepresented,

for this is the conceptual benchmark for the Sixth Amendment fair-cross-section

requirement."  <u>Duren</u>, 439 U.S. at 364.  Analysis of whether the representation of

the group in the jury venire is fair and reasonable in relation to the number of such

persons in the community is, "at least in part, a mathematical exercise, and must be

supported by statistical evidence."  United States v. Weaver, 267 F.3d 231, 240 (3d

Cir. 2001).  Under the third prong, a defendant may demonstrate systematic

exclusion in a jurisdiction's use of voter registration lists "if the use of voter

registration lists over time [had] the effect of sizeably underrepresenting a particular class or group on the jury venire." Id. at 244-45.

Beltran alleges that his counsel should have objected when the jury pool used for jury selection in his trial did not contain any African-Americans or Hispanics. In support of his argument, he provides a number of confusing, irrelevant, or incomplete facts concerning the population of Pennsylvania. (Doc. 1811-1, 16-20). Beltran also cites extensively to the findings of two demographics experts who testified concerning this issue in United States v. Ortiz, 897 F. Supp. 199 (E.D. Pa. 1995).[4] (Doc. 1811-1, at 20-21).

The record conclusively indicates that Beltran is not entitled to relief. The cited statistics do not sufficiently establish that the representation of African-Americans or Hispanics in the jury venire is not "fair and reasonable" in relation to the number of such persons in the community. Moreover, Beltran never alleges that the claimed underrepresentation was the result of any "systematic exclusion" of African-Americans or Hispanics during the jury selection process. See United States v. Rickard, 336 F. App'x 235, 242 n.6 (3d Cir. 2009) (holding that the fact that there was only one African-American in the jury pool was not evidence of systematic exclusion; rather, "[a]t best, it is evidence that an underrepresentation has occurred once, but it does not shed any light on its cause"). Thus, Beltran has

---

[4] Ultimately, the Ortiz court did not find a fair cross section violation.

not adequately demonstrated the merits of his claim, and therefore fails to demonstrate that his counsel was ineffective for failing to raise it.

Moreover, regardless of the merits of the underlying fair cross section issue, Beltran only makes conclusory allegations concerning the Strickland factors. Beltran does not demonstrate how trial counsel's representation fell below an objective standard of reasonableness based on the facts before counsel at the time of jury selection.  See Gustave v. United States, 627 F.2d 901, 906 (9th Cir. 1980) ("[t]here must be some evidence of irregularity in jury selection practices before failure to object to the panel rises to the level of ineffective assistance of counsel.") (internal citation omitted).  Beltran asserts that he specifically requested defense counsel to object to the composition of the jury, but it is clear that "[r]easonable and effective assistance of counsel does not require an attorney to sift through voluminous jury records every time his client requests that he challenge the array as unconstitutionally drawn."  Id.

More importantly, Beltran fails to make any argument concerning how the outcome of his trial would have been any different had trial counsel made a fair cross section challenge.  The census information discussed by Beltran indicates that, even if the representation of African-Americans and Hispanics in the jury venire was perfectly proportional to the number of such persons in the community, he still would have likely been tried by an all-white jury.  (Doc. 1811-1, 16-20). Moreover, it defies credulity to believe that a reasonable jury of any racial or ethnic composition would have acquitted Beltran based on the overwhelming evidence introduced against him at trial.  See Thomas v. Borg, 159 F.3d 1147, 1152 (9th Cir.

1998) ("[W]e reject Thomas' claim of prejudice because the evidence, both testimonial and physical, against Thomas was so overwhelming that it is hard to believe that any reasonable juror, black or white, would have voted to acquit him."); Pugliano v. United States, Crim. A. No. 95-1171, 2005 WL 3478360 (D. Conn. Dec. 19, 2005) ("If the petitioners' fair cross-section claim had been made prior to trial and had been successful, the case would have been transferred to either the New Haven or Bridgeport division for trial.  And, based on the overwhelming evidence of the petitioners' guilt, the verdicts would not have been different if the case had been tried in another seat of court in this District."); United States v. Davis, 939 F. Supp. 810, 817 (D. Kan. 1996) (Rejecting defendant's prejudice argument because "[t]he evidence presented at trial against defendant, aside from that which defendant alleges was wrongfully admitted, was overwhelming.").

Specifically, over the course of an approximately two week trial, the government introduced substantial evidence of Beltran's involvement in the distribution of large amounts of illegal narcotics throughout the United States.  This evidence came in the form of testimony from Romero and Sanchez; law enforcement testimony; transcripts of recorded phone calls and meetings involving or implicating Beltran; and a DEA-produced videotape of the April 22, 2006 drug transaction between Beltran and Romero.  In light of this substantial evidence, Beltran cannot establish prejudice under Strickland.

The record affirmatively indicates that Beltran's claims are without merit. Even if the court were to credit Beltran's claims of ineffective assistance, Beltran

16

has not alleged sufficient prejudice based on trial counsel's alleged deficiencies,

whether examined on an individual or cumulative basis.  Thus, a hearing is not

necessary.

**IV.     Conclusion**

For the foregoing reasons, the court will deny Beltran's motion to vacate

(Doc. 1811).  An appropriate order follows.


/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania


Dated:        March 3, 2014